UNITED STATES of America,

v.

Pedro RIVERA, et al., Defendants.

Crim. No. 95–084 (HL).

United States District Court,
D. Puerto Rico.

Aug. 14, 1996.

Joseph C. Laws, Hato Rey, PR, Rachel Brill, Hato Rey, PR, and Nicolas Jimenez–Torres, Luquillo, PR, for Pedro Rivera, defendant.

Ramon Garcia–Garcia, Santurce, PR, and Gustavo A. Gelpi–Abarca, Federal Public Defender's Office, Old San Juan, PR, for Bunker Group Puerto Rico, defendant.

Yolanda A. Collazo–Rodriguez, Bayamon, PR, for Bunker Group Incorporated, defendant.

Jorge L. Arroyo–Alejandro, San Juan, PR, for New England Marine Services, Inc., defendant.

Jorge E. Vega–Pacheco, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, Michael J. Woods, Trial Attorney, Charles A. DeMonaco, Assistant Chief, Environmental Crimes Section U.S. Department of Justice, and Rose Rodriguez–Velez, Executive Attorney to the U.S. Attorney, U.S. Department of Justice, Washington, DC, for the U.S.

### OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is Defendant Pedro Rivera's motion for judgment of acquittal of count three of the indictment, pursuant to Fed.R.Crim.P. 29. Following an eight-day jury trial, Rivera was found guilty of counts one and three of the indictment. This case arises out of an oil spill in Puerto Rico on January 7, 1994, involving the tugboat *Emily S* and the tankbarge *Morris J. Berman.* In

the early hours of January 7, 1994, the towing wire that the *Emily S* was using to tow the *Morris J. Berman* parted. The crew of the *Emily S* repaired the towing wire. The repair proved to be faulty, however, and when the *Morris J. Berman* came adrift a second time later that same morning, it ran aground at Escambrón Beach in San Juan.

Rivera was the general manager of Defendant Bunker Group Puerto Rico. He managed the operations of the *Emily S* and the *Morris J. Berman*. Count one of the indictment charged him with knowingly sending the *Emily S* to sea in an unworthy state that was likely to endanger the lives of the crew members or the lives of other individuals, in violation of 46 U.S.C. § 10908. Count three charged him with willingly and knowingly failing to notify the Captain of the Port that a hazardous condition—specifically that the towing wire had parted and left the *Morris J. Berman* adrift—existed on board the *Emily S*, in violation of 33 U.S.C. § 1232(b)(1) and 33 C.F.R. § 160.215.

The evidence at trial demonstrated that the wire the *Emily S* was using to tow the *Morris J. Berman* was in poor condition and had already snapped while it was being used on a trip in August 1993.[1] Rivera was aware of the wire's condition, and by January 1994 he had made provisions to replace it.[2] On the evening of January 6, 1994, the *Emily S* began a trip to tow the *Morris J. Berman*, half-loaded with oil, to Antigua.[3] Although Rivera had made provisions to replace the tow wire, he was not able to do so prior to the trip to Antigua.[4] The *Emily S* and the *Morris J. Berman* began the trip shortly after 10:00 at night.[5] At a little after 11:00 the tugboat and barge had left San Juan's harbor.[6]

Between 12:30 and 1:00 a.m. on January 7, 1994, the *Emily S'* towing wire parted.[7] Roy McMichael, the captain of the *Emily S*, temporarily repaired the wire by forming a loop fastened by clips.[8] The proper method, the use of a "thimble," was available to the crew, but it was not used.[9] George Emanuel, a tugboat captain employed by Rivera, had been monitoring the radio channels used by tugboats and other ships.[10] Emanuel overheard radio transmissions between the tugboat *Emily S* and the barge *Morris J. Berman* discussing the parting of the tow wire, realized that there was a problem, and he called McMichael to inquire whether he needed assistance.[11] McMichael declined the offer of assistance, and Emanuel told McMichael to call him back if he needed help.[12] After speaking with McMichael, Emanuel attempted to contact Rivera to inform him what had happened, but he was initially unable to locate him.[13] McMichael did not contact Rivera about the parting.[14]

Between 2:00 and 2:30 a.m. Emanuel went to Rivera's home and called McMichael back to see if the problem had been solved.[15] Emanuel and McMichael discussed the situa-

**1.** Transcript, docket no. 166, at 405–06, 452–55; docket no. 167, at 472, 533–34, 550–52, 577–79; docket no. 168, at 607, 612–14, 618–19; docket no. 170, at 888.

**2.** Transcript, docket no. 164, at 188–90, 195, 262; docket no. 166, at 406; docket no. 167, at 551–52, 579–80; docket no. 168, at 613–14.

**3.** Transcript, docket no. 164, at 194, 197; docket no. 166, at 404, 453.

**4.** Transcript, docket no. 164, at 195; docket no. 166, at 452.

**5.** Transcript, docket no. 164, at 199; docket no. 166, at 408–09.

**6.** Transcript, docket no. 164, at 200.

**7.** Transcript, docket no. 164, at 205–13; docket no. 166, at 410–11; docket no. 167, at 503–07, 522.

**8.** Transcript, docket no. 164, at 206; docket no. 166, at 412.

**9.** Transcript, docket no. 164, at 206–08; docket no. 166, at 439–40.

**10.** Transcript, docket no. 167, at 493, 503.

**11.** Transcript, docket no. 164, at 209; docket no. 167, at 503–06.

**12.** Transcript, docket no. 164, at 209, 255; docket no. 167, at 505–06.

**13.** Transcript, docket no. 167, at 508–10.

**14.** Transcript, docket no. 164, at 245.

**15.** Transcript, docket no. 167, at 506–12.

tion, and they decided that McMichael should continue on to St. Thomas to have the wire repaired, rather than return to San Juan to do so.[16] It was at this time that Rivera first learned of the problem.[17] Rivera consulted with Emanuel as to whether the barge should be called back; Emanuel advised him to allow McMichael to continue on with his voyage.[18] After he spoke with Emanuel, Rivera called the *Emily S* at about 3:00 a.m. and spoke with Victor Martínez, the first mate.[19] The rest of the crew was asleep at this time, and Martínez told Rivera that everything was normal and that there was not a problem.[20] At around 4:00 a.m. Martínez realized that the *Emily S* was no longer towing the barge.[21] At this same time one of the crew members of the *Morris J. Berman* radioed the Coast Guard to report that the barge had run aground and to request rescue.[22] The oil spill at Escambrón Beach ensued.[23]

At trial Rivera moved for a judgment of acquittal on count three pursuant to Criminal Rule 29(a). At that time, the Court denied the motion.[24] Rivera timely filed the present motion pursuant to Rule 29(c). Upon further reflection and following a careful review of the record and the transcript of the trial, however, the Court grants Rivera's motion.

## DISCUSSION

■ Under Criminal Rule 29 the court must determine whether the evidence, viewed in the light most favorable to the Government, would enable a rational jury to find each element of the offense beyond a reasonable doubt. *United States v. Laboy–Delgado*, 84 F.3d 22, 26 (1st Cir.1996). In making the determination, the court must draw all reasonable evidentiary inferences and all credibility determinations in harmony with the jury's verdict. *United States v. DiMarzo*, 80 F.3d 656, 660 (1st Cir.1996). It does not matter whether a different jury might draw alternative inferences or might reach a different result. *Laboy–Delgado*, 84 F.3d at 26–27.

In count one of the indictment Rivera was charged with a violation of 46 U.S.C. § 10908. That section reads as follows:

A person that knowingly sends ... or that is a party to sending ... a vessel of the United States to sea, in an unseaworthy state that is likely to endanger the life of an individual, shall be fined not more than $1,000, imprisoned for not more than 5 years, or both.

■ Count three of the indictment reads in pertinent part:

At or about 12:30 a.m. on January 7, 1994, within the jurisdiction of this Court, Defendants Pedro Rivera, Bunker Group Puerto Rico, Bunker Group Incorporated, and New England Marine Services willfully and knowingly failed to notify the Captain of the Port that a hazardous condition existed on board the *M/V Emily S*, namely, that the towing wire had parted leaving the *Morris J. Berman* adrift,

In violation of Title 33, United States Code, Section 1232(b)(1) and Title 33, Code of Federal Regulations, Section 160.215.

Section 1232(b)(1) of title 33 reads as follows:

(1) Any person who willfully and knowingly violates this chapter or any regulation issued hereunder commits a class D felony.

At the time of the oil spill 33 C.F.R. § 160.215 read as follows:

§ 160.215 Notice of hazardous conditions.

Whenever there is a hazardous condition on board a vessel, the owner, master, agent or person in charge shall immediately notify the Captain of the Port of the port or place of destination and the Cap-

16. Transcript, docket no. 164, at 212–13; docket no. 167, at 512.

17. Transcript, docket no. 167, at 514–15.

18. Transcript, docket no. 167, at 513–17, 527.

19. Transcript, docket no. 166, at 414–15.

20. Transcript, docket no. 166, at 413–15, 441.

21. Transcript, docket no. 166, at 416–17, 447.

22. Transcript, docket no. 163, at 149–50; docket no. 167, at 539.

23. Transcript, docket no. 167, at 538–40.

24. Transcript, docket no. 171, at 972–1001.

tain of the Port of the port or place in which the vessel is located of the hazardous condition.

The federal regulations at the time of the oil spill defined "hazardous condition" as follows:

Hazardous condition means any condition that could adversely affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable water of the United States. This condition could include but is not limited to, fire, explosion, grounding, leaking, damage, illness of a person on board, or a manning shortage.

33 C.F.R. § 160.203 (1994).

In the case before the Court, there is not sufficient evidence to establish beyond a reasonable doubt that Rivera willfully and knowingly failed to notify the Captain of the Port of the hazardous condition. The Government presented evidence that Rivera knew about the first parting of the wire and that he did not notify the Captain of the Port. However, the evidence further demonstrated that Rivera did not learn of this first parting until some time between 2:00 and 2:30 a.m., after the *Emily S* crew had repaired the wire.[25] After he learned of said parting, Rivera asked Emanuel what he should do, and Emanuel advised him to allow the *Emily S* to continue on with its voyage.[26] Rivera also called the *Emily S* at 3:00 a.m. and spoke with Victor Martínez, the only crew member who was awake at the time.[27] Martínez told Rivera that everything was normal and that there was no problem.[28] Rivera's conversations with Martínez and Emanuel demonstrate that he attempted to determine the status of the tow wire. The Government failed to present evidence that Rivera was aware that the repair was faulty or that the barge came adrift a second time. There is thus no evidence that Rivera ever knew of a hazardous condition caused by the parting of the tow wire. Therefore, he could not have willfully or knowingly failed to notify the Captain of the Port of a hazardous condition of which he was unaware.

At trial the Court denied Rivera's Rule 29 motion because Rivera knew that the cable was deteriorated, that it had parted during the trip to Antigua, and that the *Morris J. Berman* was carrying oil. Upon a review of the record the Court now concludes that the evidence presented could enable a rational jury to reasonably infer that Rivera had knowingly sent the *Emily S* to sea in an unseaworthy state, in violation of count one of the indictment. The evidence was not sufficient, however, to enable a rational jury to reasonably infer that Rivera had willfully and knowingly failed to notify the Captain of the Part that a hazardous condition—specifically that the towing wire had parted and the *Morris J. Berman* had come adrift—existed, as charged in count three of the indictment. Accordingly, the Court finds that the evidence, viewed in the light most favorable to the Government, could not enable a rational jury to find that Rivera violated 33 U.S.C. § 1232(b)(1).

WHEREFORE, the Court hereby grants Rivera's motion as to judgment of acquittal (docket no. 191) for count three of the indictment.

**IT IS SO ORDERED.**

---

25. Transcript, docket no. 167, at 507–16.

26. Transcript, docket no. 167, at 513–17, 527.

27. Transcript, docket no. 166, at 413–15.

28. Transcript, docket no. 166, at 413–15, 441.