# United States Court of Appeals
## For the First Circuit

No. 09-1237

UNITED STATES OF AMERICA,

Appellee,

v.

SHIRLEY ST. PIERRE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Stahl and Lipez,

Circuit Judges.

Bruce M. Merrill with whom Bruce M. Merrill, P.A. was on brief for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

March 17, 2010

**BOUDIN**, <u>Circuit Judge</u>.  The Staab Agency ("Staab") acts as an agent for out-of-state trucking companies seeking to register trailers in Maine.  Shirley St. Pierre, the appellant in this case, owned all of Staab after purchasing it from its previous owner in 1991.  Under her guidance, the company prospered, growing from approximately four employees and 4,000 customers in 1991 to 17 employees and 37,500 customers in 2002.  As the sole owner, St. Pierre regularly used company income to pay personal bills and for other personal purposes--not objectionable so long as she reported the income on pertinent tax returns.

The IRS randomly audited Staab's fiscal year 2000 returns in March 2002; the audit gave rise to suspicions and was later expanded to include other returns by Staab and St. Pierre herself. Because Staab is a Subchapter S corporation, its income is not taxed to Staab but is attributed to St. Pierre, who must pay taxes on it herself.  26 U.S.C. § 1366(a)(1) (2006).  In June 2007, St. Pierre was indicted on three counts of tax evasion, 26 U.S.C. § 7201, and one count of obstructing administration of the internal revenue laws for falsifying documents in an attempt to conceal her prior acts, 26 U.S.C. § 7212(a).

At trial, St. Pierre's underpayment of her personal taxes was undisputed; the central issue was whether St. Pierre had the requisite state of mind for the various offenses.  The government relied primarily on testimony from the accountants and lawyer who

had prepared Staab's and St. Pierre's tax returns and represented her at the audit, and the IRS agents who investigated Staab. One of the accountants, for example, testified that St. Pierre had been told to deposit company income into Staab's corporate bank account, as such deposits would enable the accountants to track Staab income that had to be reported on Staab's corporate and St. Pierre's personal income tax returns. Just when and to what extent St. Pierre understood her obligations and the tax consequences were disputed at trial.

The government showed that St. Pierre had regularly used payments, owed to Staab for trailer registration work, for her personal expenses and without depositing them in Staab's account or otherwise disclosing them to her accountants. The government pointed to diversion of such funds to 10 different St. Pierre accounts and the depositing or diversion of over 3,000 company checks without recording them as company income or paying personal taxes upon them. Records indicated unreported income of $1,248,327 for the three-year period; the taxes avoided by the failure to report this income amounted to over $500,000, apart from interest.

The complexities of the tax code have led the Supreme Court to require for tax evasion a consciousness of wrongdoing. Cheek v. United States, 498 U.S. 192, 201 (1991) ("voluntary, intentional violation of a known legal duty"). St. Pierre conceded that she had under-reported income but urged that she lacked the

requisite state of mind, arguing that she was financially unsophisticated and had relied on her accountants to capture income; as for the allegedly doctored documents, she said she had merely followed instructions from her lawyer. St. Pierre also told the jury about her background, which included early hardship, and her hard work with much personal stress.

The government countered with evidence that St. Pierre's accountants had explained to her--in connection with past failures that she had claimed to be inadvertent--the obligation to report company income on Staab's books. The government also emphasized the undisclosed bank accounts into which Staab funds were directed and evidence that she had doctored documents given to the IRS to conceal her wrongdoing when the scheme began to unravel. Although St. Pierre blamed her lawyer for the doctored documents, he testified in rebuttal and flatly denied her charges.

The jury found St. Pierre not guilty of tax evasion for fiscal years 2000 and 2001 but guilty on the evasion charge for fiscal year 2002 and the obstruction charge based on her doctoring of documents.[1] A post-trial motion was denied and she was sentenced to 27 months, to be served concurrently, on the evasion

---

[1]Although the unpaid taxes for 2000 and 2001 were also substantial, the government suggests that the jury may have given St. Pierre the benefit of the doubt as to her understanding of her obligations prior to 2002. By the time she signed her 2002 return, a tax audit was underway and St. Pierre had told IRS auditors that she understood her obligation to report company income.

and obstruction counts.  St. Pierre now appeals.  She does not argue that the evidence was insufficient to support her conviction; rather, her appeal seeks to contest two different rulings relating to the admissibility of evidence.

St. Pierre's first argument concerns her attempt to introduce expert testimony as to the standard of care owed to St. Pierre by her accountants, specifically, that her accountants erred in failing to ask her about company income not deposited in company accounts.  The purpose was to show that she reasonably relied on her accountants to capture all of her income for her tax returns. The government objected, arguing that even if her accountants were careless, such evidence was irrelevant to whether St. Pierre knew she was understating her income on her returns.

The court sustained the government's objection.  It invoked Rule 403 of the Federal Rules of Evidence, which allows the exclusion of evidence whose probative value is substantially outweighed by competing considerations (e.g., capacity to mislead or prejudice the jury).  At different points the court said that "[t]he question here is her knowledge and intent, not that of [her accountant]"; it noted the absence of evidence that St. Pierre was aware of the standards governing accountant practice; and it said that the result would be revisited if her testimony showed that she knew about the standards and relied on them.

St. Pierre asserts that the lower court's exclusion of this evidence violated her Sixth Amendment right to present a defense and misapplied the rules of evidence. The constitutional right to present a defense under the Sixth Amendment is subject to reasonable regulation, United States v. Scheffer, 523 U.S. 303, 308 (1998); Taylor v. Illinois, 484 U.S. 400, 410 (1988), and a judge ordinarily has wide latitude in administering Rule 403. United States v. Kepreos, 759 F.2d 961, 964 (1st Cir.), cert. denied, 474 U.S. 901 (1985). How far the constitutional overlap might alter our standard of review does not matter in this case because even de novo review would not change the outcome.

At first blush, one might think that whether St. Pierre's accountants exercised due care was flatly irrelevant to any issue properly in the case. Mere failure of the accountants to detect her under-reporting or to give St. Pierre better directions, even if negligent, would not be a defense to a knowing effort by St. Pierre to evade taxes or willfully create false documents.[2] The jury was told what elements were required to prove tax evasion and obstruction, and the evidence amply permitted the jury to find that St. Pierre had the requisite consciousness of wrongdoing.

---

[2]See United States v. Chesson, 933 F.2d 298, 305 (5th Cir. 1991)("[W]here a defendant attributes underpayment of taxes to his accountant's failure to discover and rectify improper expenses, the question of willfulness is not removed from jury consideration."); accord United States v. Olbres, 61 F.3d 967, 970-71 (1st Cir. 1995).

The trial judge was probably wise to invoke Rule 403, thereby assuming _arguendo_ some possible relevance of the proffered evidence, however minimal or doubtful. Cases can be imagined where an accountant's neglect could bear on the likelihood that a taxpayer's under-reporting was due to honest reliance rather than deliberate dishonesty. And, although not at all a straightforward inference in this case, in some situations the professional standards governing accountants might in turn have some bearing on whether there was such neglect.

However, the scheme as charged and proved in this case was not hospitable to such reasoning. The government's evidence allowed the jury to find that St. Pierre, in diverting company income to personal ends but not reporting it as income to the company or herself, had acted against warnings; that St. Pierre had used multiple personal accounts not disclosed to accountants; that the scale of diversion was huge; that the accountants were unaware of most of what was occurring; and that St. Pierre herself engaged in creating false documents to cover her tracks.

By contrast, St. Pierre's proposed accounting standards evidence, by shifting the focus to whether the accountants were doing a good job, did have a potential to confuse and mislead a jury--precisely because her accountants' failure to prevent the fraud would not be a defense. To the extent that St. Pierre relied on what she said her accountants or lawyer or bankers told her, she

was permitted to offer such evidence. Her own beliefs about what they were responsible for doing might also be pertinent to her state of mind. Evidence of accounting standards, unknown to St. Pierre, had at best little tendency to negate the damning inferences against her, and Rule 403 was properly applied.

St. Pierre's second argument is that the court unduly limited her cross-examination of the government witnesses against her. Like the right to present a defense, the right to confront witnesses is qualified; the trial judge "retain[s] wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

In reviewing limits on the scope of cross-examination, we ask de novo whether the defendant was given "sufficient leeway to establish a reasonably complete picture of the witness' veracity, bias, and motivation," United States v. González-Vázquez, 219 F.3d 37, 45 (1st Cir. 2000) (quoting United States v. Laboy-Delgado, 84 F.3d 22, 28 (1st Cir. 1996)); but as to individual rulings by the trial court, scrutiny is tempered by deference and reviewed for abuse of discretion, id.; see also United States v. Ofray-Campos, 534 F.3d 1, 36-37 (1st Cir. 2008).

-8-

St. Pierre first says that she was unduly limited in cross-examining the IRS agent, Roland St. Louis, who had conducted the initial investigation of the Staab and St. Pierre returns. St. Louis testified as to the conduct of his investigation, to his interactions with St. Pierre and John Hallee (her accounting representative during part of the investigation), and to what he discovered in the audit. St. Pierre objects that she was limited by the trial judge in exploring possible hostility between St. Louis and Hallee by showing, importantly, the former's concern that the latter had been delaying the investigation.

St. Louis had in his direct testimony portrayed the relationship as friendly, albeit with some friction, and St. Pierre describes her excluded evidence as aiming to show prejudice by St. Louis, although the inference St. Pierre proffered to the district judge was perhaps slightly different than prejudice.[3] Arguably, the evidence might have been independently relevant to impeach by contradiction if there were a real conflict. But the proposed cross examination had little punch to suggest either prejudice or

---

[3]St. Louis testified that while he had told his manager "there ha[d] been unreasonable delays on Mr. Hallee's part" in responding to the audit, he had refused to sign a letter formally accusing Hallee of the same. St. Pierre, claiming that this left the jury with the mistaken belief that St. Louis felt positively toward Hallee, wanted to cross-examine St. Louis regarding evidence that St. Louis, when asked by IRS personnel for names of tax preparers that they might investigate for misconduct, had recommended Hallee's firm to them as a possible target.

contradiction, and exclusion can easily be sustained under Rule 403 as a waste of time.

St. Pierre's underlying aim in seeking to develop the excluded evidence may be its tendency to show that St. Louis himself had a negative view of Hallee's competence. Despite the exclusion of expert evidence on accounting standards, St. Pierre's main defense at trial rested in part on the notion, developed by her trial counsel, that her accountants had not done an adequate job. For the reasons already set forth, St. Louis' views or conduct bearing on this issue were no more admissible than testimony about accounting standards.

Relatedly, St. Pierre objects to a ruling limiting her cross examination of her former lawyer, Sumner Lipman, who had represented her at the start of the IRS audit. In her own case, St. Pierre had blamed him for urging her to supply false documents to the IRS, a charge he flatly denied in the government's rebuttal case. On cross examination, St. Pierre sought to examine Lipman as to his failure to tell her that he had at one time represented St. Louis and his wife in a personal injury case. The judge said that this had "very little probative impact" and would divert the jury.

St. Pierre suggests that Lipman's failure to disclose comprised an ethical violation, but this is far from self-evident or even a promising theory, nor is it at all clear why it would be relevant to Lipman's credibility or trustworthiness as a witness.

As it happens, the jury was told by the government that Lipman and St. Louis had a relationship prior to the audit. And certainly Lipman's motive for denying that he had encouraged a client to fabricate evidence was obvious without regard to any prior connection with an IRS agent.

Finally, in a single paragraph, St. Pierre says that she was precluded from asking the accountants who testified "as to what inquiries they had made of [her] in preparing the corporate tax returns." No specific testimony is discussed and this appears to be a reiteration, under a Confrontation Clause heading, of her effort to offer evidence of professional standards. The accountants in fact testified, and they were cross-examined at length about their interactions with St. Pierre and about their own practices.

St. Pierre's brief concludes with a claim that the district court abused its discretion in refusing to grant her motion for a new trial. The district judge enjoys discretion in this matter but that is beside the point: no separate arguments are made by St. Pierre under this heading, which is essentially a cross reference back to claims of error already addressed and found wanting.

Affirmed.