# United States Court of Appeals
## For the First Circuit

---

No. 01-1162

UNITED STATES OF AMERICA,

Appellee,

v.

STEVEN BUNNELL,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Coffin, Senior Circuit Judge,

and Torruella, Circuit Judge.

---

Robert A. Ratliff on brief for appellant.
Paula D. Silsby, United States Attorney, and Margaret D. McGaughey, Appellate Chief, on brief for the United States.

---

February 15,2002

---

BOUDIN, Chief Judge.  On August 25, 1998 Lisa Bunnell, the defendant's ex-wife, applied for a state court order of protection against the defendant Steven Bunnell.  The final two-year order, issued on September 11, 1998, and served on Bunnell, prohibited the use, attempted use, or threatened use of physical force against Lisa Bunnell.  The order (issued after notice and an opportunity for Steven Bunnell to participate) also warned in bold block print that possession of a firearm by him would be a crime if a specific box were checked and the box was checked.  Another box directly banning the possession of firearms without regard to other conditions in the order was not checked.

On April 3, 2000, John Knoblach--serving in the National Guard with Bunnell--told Officer Scot Bradeen of the Lewiston Police Department that Bunnell had made comments about killing his ex-wife while firing an M-60 machine gun during a training exercise.  Knoblach also said that he had seen Bunnell in possession of a Colt AR-15, the civilian version of the M-16 assault rifle, and that Bunnell told Knoblach he wanted to rent an apartment in which a previous tenant had shot and killed his wife or girlfriend.  Bradeen confirmed that there existed a protective order that prohibited Bunnell from possessing a firearm and that Bunnell was in fact living in an apartment where a

woman had been shot a year earlier. On this basis, Bradeen applied for an arrest warrant.

In the meantime, Lewiston Police Officers Bussiere, Cashman, and Roberts confronted Bunnell in a local convenience store, and told Bunnell that he was not under arrest but that the police were investigating a claim that Bunnell had illegally possessed a weapon while under a protective order. Bunnell admitted that there was a protective order in force against him and that he did possess a Colt AR-15 in his apartment, but he said he was unaware that the protective order prohibited him from possessing a firearm and stated that he wished to turn over the weapon to the police.

Bunnell returned to the apartment with Officer Cashman. When the other officers arrived, Bunnell repeated that he wanted to turn over the gun; he even offered to retrieve it himself, but was instructed to remain seated in the kitchen. The officers proceeded to search the apartment and, following Bunnell's verbal directions, found the Colt AR-15, four taped-together loaded ammunition magazines, and a copy of the protective order. At about the same time, two other officers arrived with a consent-to-search form, which Bunnell signed. Thereafter, Officer Bradeen arrived with the arrest warrant, questioned Bunnell for a few minutes, placed him under arrest and then gave him Miranda warnings. United States v. Bunnell, 106 F. Supp. 2d 60, 64 (D. Me. 2000).

-3-

Bunnell was indicted for possessing a firearm while being subject to a protective order. 18 U.S.C. § 922(g)(8) (1994 & Supp. V 1999). The district court refused to suppress the physical evidence but did suppress Bunnell's prearrest statements under Miranda v. Arizona, 384 U.S. 436 (1966). See Bunnell, 106 F. Supp. 2d at 68-69. Bunnell was convicted after a jury trial and sentenced to 37 months in prison. He now appeals.

Bunnell first denies that he consented voluntarily to the search that produced the physical evidence. Consent, if valid, made a search warrant unnecessary. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Whether in consenting Bunnell was unduly intimidated by the presence and behavior of the officers was a factual question, United States v. Mendenhall, 446 U.S. 544, 557-58 (1980), and the district court's conclusion that consent was voluntarily given--made after witness testimony at the suppression hearing--was not clearly erroneous, see United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). Bunnell's initial offer at the store to turn over the weapon and oral invitation to search made at the apartment even before the consent form was tendered make this a straightforward case. There was no automatic obligation to warn that evidence found could be used at trial. See Schneckloth, 412 U.S. at 246-48.

Bunnell objects to the district court's admission at trial of the Colt AR-15 on the ground that he had stipulated to possessing

-4-

it, and that its appearance in the courtroom unfairly prejudiced the jury. See Fed. R. Evid. 403. Such evidentiary rulings are generally reviewed for abuse of discretion, Larch v. Mansfield Mun. Elec. Dep't, 272 F.3d 63, 72 (1st Cir. 2001), and this is hardly an egregious case. Further, the government still had to prove that the gun had traveled in interstate commerce under the statute, and the government's expert permissibly used the gun in explaining how this requirement had been satisfied.

Although Bunnell also argues that Officer Bradeen's testimony about the history of Bunnell's apartment was unduly prejudicial and should not have been admitted at trial without a limiting instruction, that testimony was admitted only at a pre-trial suppression hearing with no jury present. The Federal Rules of Evidence, apart from testimonial privileges, do not apply at suppression hearings, United States v. Schaefer, 87 F.3d 562, 570 (1st Cir. 1996). The testimony was admitted only to show Officer Bradeen's state of mind when he first approached Bunnell; it was not an abuse of discretion to admit the statement for this limited purpose.

Bunnell also says that the district court erred in denying his request to instruct the jury on a defense of entrapment by estoppel. In a voir dire hearing, Bunnell testified that he had had a conversation with a National Guard sergeant recruiter about moving from inactive to active status. Bunnell said that he had told the recruiter

that a protection from abuse order had been entered against him, but that the recruiter said that reenlistment was still permitted so long as there was no conviction for domestic violence.[1] Bunnell conceded that the recruiter had said nothing about Bunnell's right to possess a weapon, but Bunnell said that he inferred that the protective order was no bar because his duties in the National Guard would have required him to carry a rifle and the box on the order directly prohibiting possession of firearms had not been checked.

A defense of entrapment by estoppel would require Bunnell to show that he had been told by a government official that his behavior was legal and that he reasonably relied on that advice. United States v. Ellis, 168 F.3d 558, 561 (1st Cir. 1999). In this case, Bunnell never claimed that the recruit sergeant told him that he could possess any weapon, let alone a private weapon in his home; and the protective order stated that Bunnell was prohibited from possessing a weapon. Under these circumstances, we agree with the district court that there was no basis for a finding of reasonable reliance. Absent a basis on which a jury could find an estoppel claim, no instruction was required. United States v. Angiulo, 897 F.2d 1169, 1204-05 (1st Cir. 1990).

---

[1]The recruiter testified that no such discussion had occurred and, if it had, policy would have required that Bunnell's application not be processed until the order expired or was vacated. Although the district judge credited the recruiter's version of the events, we will assume arguendo that a jury might have believed Bunnell.

Bunnell's claim in the district court that the unchecked box on the order supported an estoppel claim is not renewed on appeal.

As to his sentence, Bunnell objects that he was denied a downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1(a) (2000). But the district court explained at sentencing that Bunnell's own statements at sentencing showed that he did not accept responsibility, and we find no clear error in this determination. United States v. Talladino, 38 F.3d 1255, 1263 (1st Cir. 1994). Because Bunnell did not accept responsibility, his further request for a one-level adjustment based on assisting the authorities was foreclosed. See U.S.S.G. § 3E1.1(b). Bunnell's further claim that the district court erred by refusing to depart downward based on lesser harms, see U.S.S.G. § 5K2.11, is unreviewable unless based on a mistake of law. United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994). The district court's statements give no indication that it misunderstood its authority.[2]

Finally, Bunnell argues that the prosecutor inaccurately and unfairly asserted that Bunnell had more than once "visualized shooting his wife." Bunnell does not deny that he had spoken of killing his wife while firing his machine gun during a training exercise, but

---

[2]Bunnell's claim that the court erred in applying an obstruction of justice enhancement under U.S.S.G. § 3C1.1 for cutting his home monitoring bracelet is baseless; the court, in fact, declined to impose the enhancement.

contends that no one could know what he actually "visualized."  This phrasing was used not at trial but only at sentencing.  The sentencing judge, who had heard the testimony as to what Bunnell said at the firing range, was  capable of making an independent evaluation as to the intention behind the remarks.

<u>Affirmed</u>.